Thank you, Madam Clerk. Please be seated. Good morning and welcome to the Ninth Circuit Court of Appeals. My name is Morgan Christian. I'm one of the judges on the Circuit Court. My chambers are in Anchorage, Alaska. I'm delighted to be sitting this week with two of my colleagues from the Circuit Court, Judge Lee, who's on my right. His chambers are in Southern California, and Judge Bress, whose chambers are right here in San Francisco. We have submitted a few cases, and so, for the record, I just need to make clear that in case number 24-3453, Herrera Lozano v. Bondi, we will not hear argument. The same is true in 24-4029, Garcia Torres v. Bondi, and 24-5816, Ryman v. Town of Los Gatos. The first case on the argument calendar is Ratcliff v. Williams. That is 24-1828. Counsel, we're ready to hear your argument. Good morning. My name is Leo Henges. I represent the appellants who were the defendants below in this case. Thank you for the opportunity to present argument on their behalf this morning. I would ask to reserve two minutes for rebuttal. You bet. Just keep an eye on the clock, please. Absolutely. This appeal raises four arguments why the district court order denying summary judgment should be reversed and why the case should be remanded and judgment entered on behalf of the defendants. First, this is a unique set of factual circumstances, and there is no clearly established case law that would have placed a reasonable official on notice of a potential violation. Second, the undisputed facts failed to establish the personal participation required as a matter of law for these defendants to be liable under 1983. Third, as the plaintiff appellee below, Mr. Ratcliff failed to meet his burden to establish the existence of a protected liberty interest. And fourth, even if there was an established protected liberty interest, there was the circumstances of this case provided Mr. Ratcliff all the process that was required under the law. So on your list, which was helpful, how can we deal with number two on this interlocutory appeal? Personal participation? Yeah. Because there's no factual dispute here. This is clearly a question of application of the law, which is appropriate for qualified immunity. But I mean, I thought the argument was certain people did not participate, and the plaintiff is saying those people did participate, so isn't that a factual dispute? No. The facts that are material to that question of law are not in dispute. Well, the district court found that they were, sir. The district court found that the defendants had the ability to participate and make a recommendation in a classification review. We found that there was a disputed fact, and the record sure looks like there's a disputed fact about this. Then we disagree, Your Honor. We feel that that's a question of law, whether or not those the ability to participate in a classification review and to make a recommendation to the offender management division, who Mr. Ratcliffe, in his brief, admits made the final decision about where to place him, whether that is sufficient conduct, participation to establish a legal obligation under 1989. But what they're arguing, of course, is that it's not the initial placement, but the 30-day reviews that didn't happen. Correct. But they also admit that offender management division classified Mr. Ratcliffe as closed custody when he was returned from Arizona, his proper placement to Las Vegas, to High Desert State Prison to receive vision-saving corneal transplant surgery. Once that classification occurred, Mr. Ratcliffe was closed custody based on administrative regulation 521 from the Department of Corrections. He was required as a closed custody maximum security offender at a medium security facility that is High Desert State Prison at the time to be housed in administrative segregation. There was no discretion on behalf of these. I think we've got your argument on this. It sounds like you've briefed this issue, and I think we have your argument. Is there any thought about that?  So what about the clearly established law? Why do you think there was not clearly established law here? What sets this case apart from all the other precedent that we have, Your Honor, is that here, Mr. Ratcliffe's appropriate classification and custody housing placement was at Core Civics Prison in Arizona. We know that there's no protective liberty interest in being housed in a private prison, but for his need for emergency medical surgery for a corneal transplant, High Desert State Prison was not an appropriate housing placement for Mr. Ratcliffe. That's not in dispute. He was always classified as treat and return. You're at High Desert long enough to get your medical care, then you will be returned to Arizona, which was your appropriate placement. So there's case law that says if you're being held in prison in a situation that is beyond the ordinary incidence of prison conditions, there has to be some amount of process that goes along with that. Are you arguing that there's just sort of an exception for people who have a medical issue? Our argument is that there's no case law that would have placed a reasonable official on notice prior to this instance. Because of why? Because he had the medical issue? Because the state had a dual function to serve in this case, Your Honor. We had the safety and security requirement to classify him appropriately and decide where he was appropriate to house, which was in Arizona at Core Civic. On the other hand, the state has the obligation to provide for reasonable medical care. Here it was a corneal transplant surgery. Did they require him to be, for medical reasons, in that prison for 11 months? Was that a medical necessity to be there for 11 months? Yes. That's actually alleged by Mr. Ratcliffe, I believe, in his complaint that following the corneal transplant surgery, his doctor told him he would need regular follow-ups to make sure that there was no rejection of the transplant. So as long as he had the need for... Was that 11 months, though? That seems like an awfully long time. Yes, Your Honor. 11 months in administrative segregation, or just 11 months in Las Vegas? 11 months in administrative segregation from end of November 2017 to October 31, 2018. Where in the record does it talk about why he needed to be housed in essentially solitary confinement for 11 months due to the eye issue? It was because of his classification status in the case notes that the parties do not dispute that he was classified as closed custody upon his return from Arizona. And Administrative Regulation 521 requires that a closed custody... And so that's contradictive, and the district court found as much in argument that the state had conceded an argument before the district court that not all prisoners who are housed there for medical purposes have to be kept in administrative segregation. That's correct, Your Honor, but not all prisoners that are housed there for medical are inappropriate to classify to house in an administrative facility. But this is a separate problem. This is a separate problem, because in response to his grievances, although in this briefing the State has consistently insisted that he was in administrative segregation solely for a medical reason, it's also clear that in response to the grievances they indicated, well, and by the way, you have this disciplinary history. And what he's alleged is that he was in the very same administrative segregation conditions when he was there for disciplinary reasons as he was when he was in there for nondisciplinary reasons. Really no difference at all according to these allegations. There was, in fact, a stark difference, Your Honor. Mr. Ratcliffe was reclassified and he was transferred to Arizona as his appropriate  No, I'm not talking about the transfer. I'm just talking, forgive me, but within High Desert State Prison. I'm just talking about while he was there. When he was returned from CoreCivic to obtain this medical treatment, he was reclassified as closed custody. Not all prisoners who are there, the State has conceded this point, who are there for medical reasons have to be in solitary confinement. That's correct. However, he was released and he was actually cleared for general population before he went to Arizona. And then at the end, on October 31st, when he was cleared back to general population, he still had medical care that he needed. So it doesn't really add up, sir. The main difference is that not all offenders who were housed at High Desert State Prison were closed custody. In fact, offenders who were closed custody would not have been at High Desert State Prison. The offenders at High Desert State Prison who needed medical care in the Las Vegas area who were appropriately housed at a medium security facility absolutely would not have been in segregated housing. I don't see a universe, sir, in which somebody can be kept for 11 months in solitary confinement, administrative segregation, whichever term you want to use, and not be entitled to 30-day review. Respectfully, Your Honor, if you review the complaint. Pursuant to Reg. 507, just to be clear. If you review the complaint and the opposition brief, at no point does Mr. Ratcliffe ever allege that he was denied tier time, denied access to outdoor time, that he was in solitary confinement, that he was locked down for 23 hours a day. He actually does. I've reviewed it all very carefully. He makes those allegations, sir. And at this point, you're not appealing the failure to exhaust. My time is up, Your Honor. You know, we have taken a lot of your time. But you wanted to save two minutes, so. Not at all. Please. I want to understand more specifically where you think the lack of clearly established law is here in relation to this case. It's a but-for causation, Your Honor, that but-for the obligation of the prison facility to provide medical care with a cornea transplant surgeon who was physically located in Las Vegas. Everyone agrees Mr. Ratcliffe was appropriately classified to house in Arizona. There's no case where the offender claims that they were denied due process because of a placement that was not where they were actually appropriately classified to house. Brown v. Oregon Department of Corrections, which the district court said was potentially closely related, that offender was in the DSU in Oregon as his appropriate placement. It's not that he would have been classified somewhere else but for medical. That but-for causation is what makes this case different. But, sir, this I think circles back to his allegation that was at High Desert State Prison, he was cleared to return to the general population before he went to Arizona for about nine days. He came back to High Desert State Prison for a medical reason, to have the eye surgery, and then he winds up in solitary confinement because he's reclassified. Again, his complaint isn't about that classification decision. His complaint is about the failure to receive periodic reviews while he was there. And your contention is that there's no clearly established law that would have put them on notice that he needed to be reviewed while he was there? Yes. That is because of the closed custody classification upon his return from Arizona. Okay. That mandated his placement while he was still closed custody. And the minute the day the same day he was reclassified, 11 months later, and was then appropriately housed at High Desert State Prison. Yes. When he was given the hearing, he was reclassified and was released to general population. I think I've interrupted Judge Breyer. No, no. I'm good for now. Thank you. Okay. When you come back, sir, we'll put two minutes on the clock. We took quite a bit of your time with questions. Thank you for your patience with them. Good morning. May it please the Court. Alex Treiger for Appelli. Evan Ratcliffe. The law was clear in 2017 that prisoners held in indefinite or lengthy solitary confinement have a due process right to meaningful periodic reviews. But a jury here could find that defendants failed to provide Mr. Ratcliffe those reviews while he languished in administrative segregation for nearly a year. How clearly established is the law on how frequent the reviews need to be? Do you know? Do you have a sense of that? Because, I mean, I could see the argument saying, well, we don't need to decide that here because we do know that 11 months is too long. But just on the legal question of how frequent they need to be, do you think that's clearly established? I do think that's clearly established, Judge Brass. And let me just say, I think the clearly established law is where I want to spend my time. I think you put your finger right on it at the beginning of the argument that the question of — So what's clearly established? Every 30 days? Every 60 days? Is there an answer? The answer comes from this Court's decision in Toussaint. I'd point you to 801F2, page 1101, where this Court said that prison officials must review prisoners in administrative segregation more than once a year. And what I think I want to underscore and make sure the Court understands is that Mr. Ratcliffe's confinement in administrative segregation was effectively indefinite. As Defendant Nash told him, and this is at page 2ER210 of the record, he would stay in solitary confinement until he completed his medical treatment and was transferred to another facility. Mr. Ratcliffe had no control over those events. Defendants had no control over those events. And from conversation with my client, I understand he's still receiving medical treatment and he's still at High Desert State Prison. But he's not in administrative segregation? That's correct. But so what is the story with I'm hearing from the other side something to the effect of, well, when he came back over for medical reasons, he was sort of improperly in Las Vegas because the needs for that kind of prisoner, even setting aside the medical, were just not being met in that prison. So he had to be in this special holding situation. What does the record say about that? I think that's right. So if I can help try and unpack that, my understanding is that when he was transferred back from Arizona to High Desert State Prison, OMD reclassified him as close custody. And that's what resulted in his initial placement in administrative segregation. But again, and I think that's because of his disciplinary past that has nothing to do with the medical? That's correct, Judge Bress. But I think as Judge Christin pointed out, we're not challenging his initial placement in administrative segregation. We're challenging defendant's failure to review him for the next year. And when you look at the administrative regulations, Nevada's own prison policies, when you look at AR506, which deals with classification, it provides a role for OMD when a prisoner is transferred between facilities, but it doesn't give OMD a role for classifying prisoners within a facility. And more importantly, AR50605 says that administrative segregation is governed by Administrative Regulation 507, which is in the record at 2ER154. And when you read that, it doesn't mention OMD anywhere. Right. And so in fact, it places the responsibility on the two defendants that we have here for those 507 reviews. Can I ask you about this Rule 507? Because you just indicated that you thought that he would be entitled to review at least once a year. It seems to me that the regulations put the defendants on notice that he was entitled to review more frequently than that. That's correct, Judge Christin. And I think candidly, we acknowledge that a violation of State prison policy is not in and of itself a constitutional violation. But this Court's case law, again, Toussaint makes clear that these reviews must be conducted more than once a year. And so as Mr. Ratcliffe is in administrative segregation for 6, 7, 8, 9, 10, 11 months, Toussaint put defendants on notice that they needed to conduct these periodic reviews. Certainly, it can't satisfy due process or Toussaint to review a prisoner a day 361 and day 362 and say you've given them multiple periodic reviews a year. The record here, at least the documents show that he received four reviews. I know your client says they never happened. If those four reviews did occur, would you agree that qualified immunity applied because there's no clearly established law? I would agree that if the reviews did in fact occur, which is disputed and is a question that I don't think is properly before the Court in this interlocutory posture, it's not that they would be entitled to qualified immunity. It's that they would have provided him the process that he was due. But nonetheless, I think it's worth noting that a jury here could still find that those periodic reviews were meaningless. So Hewitt, footnote 9, makes clear that prison officials must review prisoners in administrative segregation and determine that there is a valid security-based justification for their continued isolation. Here, and this goes back to the colloquy you were having with my friend, Mr. Ratcliffe was repeatedly told that he was in solitary confinement because he was a medical treat-and-return inmate. That is not a security-based justification that justifies his ongoing confinement. I think, Judge Lee, you are exactly right. Eleven months is an awfully lengthy period of time to be held in solitary confinement when there's no need for that. And so, again, Hewitt and Toussaint, Judge Brass, would have put defendants on notice that they needed to give him periodic reviews and that their failure to review him would violate due process. I understand it's disputed whether there were any periodic reviews, but what we have some documents that suggest maybe there were. Your client says that never happened. Is there anything else in the record on this? No. There is not, candidly. And that's what makes it, I think, a stark, genuine dispute of fact. The prison case notes this is 3 ER 360. This would seem like something that could be discovered. There's documents that suggest the reviews happened. Were there not depositions or other inquiries of the people who were there, allegedly? With the caveat, Judge Brass, that I did not represent Mr. Ratcliffe below in the district court. Did he have counsel below? He did not. He was proceeding pro se. My understanding is there was some discovery, like interrogatories, but there were not depositions. We have the written discovery. And so what we're left with here is a stark factual dispute where Mr. Ratcliffe has said repeatedly under oath, I didn't receive any hearings. The prison case notes say that he was present. The district court looked at that evidence and said that there was a genuine issue of fact here. And under cases like Johnson and a State of Anderson, this Court is bound to disagree. But so what's the answer to the documentation? Is it fabricated or just it's untrue? What do we make of that? Or it could be a separate question as to whether we can review it, but I'm just kind of asking myself where is this case going. Or they could have been inaccurate or there could be a misunderstanding. I think where this case needs to go at the end of the day is trial, so that Mr. Ratcliffe can tell his side of the story, defendants can tell their side of the story, and a jury can make credibility determination. I have a separate question. All of your answers at this point assume that he was kept in administrative segregation for nondisciplinary reasons. One of his allegations in his handwritten petition is that the conditions were identical. When he was there for disciplinary reasons as they were for when he was in for nondisciplinary reasons. Is that contested? That seems to be uncontested is what I'm trying to say. Do I have that right? It's not been disputed as I read the briefing.  So my next question is that then the defendants repeatedly argued that he was entitled to the same incidence of prison life in administrative segregation as others. And there's, of course, a regulation that says administrative segregation can't be used for disciplinary reasons when you're in, you know, nondisciplinary administrative segregation. So what I hear him alleging, I think quite clearly, is all the various things he was denied access to and kept in true, sounds identical to disciplinary solitary confinement to me. And to Judge Bress's point, what I see on this record is the defendants just repeatedly insisting that by regulation he was entitled to not be deprived. But it just seems to be a very stark black-and-white dispute about what the conditions were that he was experiencing. I think that's absolutely correct, Judge Kristin. Defendants' argument that no reasonable jury could find a due process violation improperly asks this Court to reweigh the evidence and to second-guess the district court's construction of the record. You're right that defendants have repeatedly argued that Mr. Ratcliffe, as a matter of Nevada prison policy, was supposed to experience the same conditions as the general population. But he said repeatedly under oath that he was denied many of those privileges. Before the litigation, I'd point you to 2 ER 8687. And during the litigation, I'd point you to 2 ER 255, where he says he was denied access to outdoor rec time, the ability to participate in programs, job, religious services, the store. And so the district court found a genuine issue of fact here about whether his conditions were in a typical and significant hardship. So then at the 11-month mark, once this was finally ventilated, he was then taken out of this? That's correct. Okay. And what was the basis for that at that point? What changed? I don't know. He received a full classification committee hearing. And at that hearing, the prison officials looked at him and determined there was no need for him to be in administrative segregation. But isn't it also undisputed he wasn't done with his medical treatment at that point? And, you know, he makes that allegation in several different places. So to follow up on Judge Brass's question, it doesn't seem that the need to be housed in any particular cell for medical reasons changed. That's correct. My understanding, Judge Brass, is that he's still receiving medical treatment. And to your question, Judge Kristen, there's nothing in the record that says that he needed to be in administrative segregation specifically because of his medical condition or to receive medical care. And, indeed, at the 11th month mark, he was reclassified and let back to general population where he continued to receive medical treatment and continued to stay at High Desert State Prison. Counsel, you're out of time. Just one minute, please. Judge Brass, anything further? I think we're good. Thank you so much for your presentation. Thank you, Your Honor. Thank you. We'll hear from opposing counsel, please. Thank you, Your Honor. I just wanted to focus on the lack of a protective liberty interest in this time. If you look at 2 excerpt of record, page 86, with his opposition to a summary judgment motion, Mr. Ratcliffe alleged that he was not allowed to work, program, or receive packages, which Arizona offenders were allowed to do. Page 2 excerpt of record 255, he claims he was denied religious services, no programs, no work, no food to order. Never one point in the complaint or the opposition to motion for summary judgment does Mr. Ratcliffe ever allege that he was denied tier time, that he was denied access to the phones, that he was denied outdoor yard time, that he was held in a cell for 23 hours a day. The district court held a hearing on the summary judgment motion and at that hearing invited Mr. Ratcliffe to expand upon his allegations of deprivations. That was not a noticed evidentiary hearing. That was not under oath testimony. Mr. Ratcliffe wasn't sworn. Those allegations come exclusively from the testimony at the. I appreciate that and you've briefed that, but it wasn't an evidentiary hearing. He's there in a pro se capacity, so his remarks weren't evidence any more than a lawyer's remarks would have been evidence. But he's still got, and you haven't, the State is not persisting in its failure to exhaust argument. So he's alleged other deprivations. He's surely alleged that he was housed in administrative segregation under conditions that were identical to disciplinary segregation for a period of 11 months, sir. First, I would disagree that we've abandoned the exhaustion argument. I believe that's the most strong argument for us. However, I'm not aware of any case that allows for an interlocutory appeal regarding exhaustion, unfortunately. That would have been the first issue that I would have raised because I believe that was the most incorrect. It's a fair point. That's not why we're here. And then if we, the District Court used the allegations from Mr. Ratcliffe at the oral argument to expand the record and to deny summary judgment. If we rely solely on the allegations that Mr. Ratcliffe was not allowed to work, program or receive packages like other Arizona offenders, with Arizona as the baseline, that's not enough to establish an atypical hardship as a matter of law. If we look at what he alleges in page 255, that he was denied religious services as well as programs, work and food. Again, that alone is not enough to establish an atypical hardship to present a protected liberty interest where the reviews would then be necessary. You're over time. We want to thank you for your argument, both of you. We'll take that case under advisement.
judges: CHRISTEN, LEE, BRESS